# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| FRED FREEMAN, # 235180 ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 0:04-22832-DCN-BM |
| ) | |
| v. ) | |
| ) | |
| JON OZMINT, DIRECTOR, ) | |
| SOUTH CAROLINA DEPARTMENT ) | |
| OF CORRECTIONS (SCDC); NFN ) | **REPORT AND RECOMMENDATION** |
| BAZZLE, WARDEN; NFN ) | |
| MUHAAWAHA, CLASSIFICATION ) | |
| CASE WORKER; NFN OLSON, FOOD ) | |
| SERVICE DIRECTOR; JOHN DOE, ) | |
| MEDICAL DIRECTOR, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

This action has been filed by the Plaintiff, pro se, pursuant to 42 U.S.C. § 1983. Plaintiff, an inmate with the South Carolina Department of Corrections, alleges violations of his constitutional rights.

The Defendants filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P., on June 1, 2005. As the Plaintiff is proceeding pro se, a Roseboro order was entered by the Court on June 6, 2005, advising Plaintiff of the importance of a motion for summary judgment and of the necessity for him to file an adequate response. Plaintiff was specifically advised that if he failed to respond adequately, the Defendants' motion may be granted, thereby ending his

1



case. Plaintiff thereafter filed material in opposition to the Defendants' motion on July 6, 2005. Defendants filed a reply memorandum on July 12, 2005, following which Plaintiff filed his own reply memorandum on July 21, 2005. Defendants' motion is now before the Court for disposition.[1]

### Background

Plaintiff alleges in his verified Complaint[2] that on June 12, 2003 he was working in the prison cafeteria when he "started to feel light headed-dizzy while lifting." Plaintiff alleges that this was "common from the increasing of my medication-Dilantin for seizure." Plaintiff alleges he was lifting sheet pans, and when he began to feel light headed he stopped for a few minutes and then proceeded back to work. Plaintiff further alleges that in the process of lifting a mixing bowl he "turned somehow another and re-injured [his] back." Plaintiff alleges he lost his balance in the process of lifting this mixing bowl due to his being light headed because of the Dilantin.

Plaintiff alleges that the Defendants are liable for what happened to him because they are "fully responsible for negligence of non-assessment before placement in food service." Plaintiff alleges that following this incident his condition was assessed on June 18, 2003, at which time he was "discharged and told that I was prohibited from operating machines with moving parts, somewhat a little late." Plaintiff alleges he then presented claims relating to his injuries to the South

---

[1] This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d) and (e), D.S.C. The Defendants have filed a motion for summary judgment. As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.

[2] In this Circuit, verified complaints by pro se prisoners are to be considered as affidavits and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991). Plaintiff has filed a verified Complaint. Therefore, the undersigned has considered the factual allegations set forth in the verified Complaint in issuing a recommendation in this case.



Carolina Worker's Compensation Commission, but that his "claim to this Court is for compensatory, punitive damages and norm[al] nominal, and psychological damages including personal humiliation for endangering my life[,] for emotional distress, from the absence of proper classification procedure." Plaintiff also claims that he has received inadequate medical treatment, because "prison officials refuse[ ] to refer me to neurologist specialist for his or her professional opinion relating to why I lost [my] balance." Plaintiff also appears to allege that other medical tests have shown that he has injuries to his spinal cord or "vertebras". Plaintiff seeks monetary damages. See generally, Verified Complaint.

In support of summary judgment in the case, the Defendants have attached a copy of Plaintiff's medical records as Exhibit 1 to an affidavit from Brenda Dash-Frazier, Director of Health Information Resources at the South Carolina Department of Corrections. Defendants have also submitted an affidavit from Amy Enloe,[3] a nurse practitioner assigned to the Perry Correctional Institution (PCI), where Plaintiff is housed. Enloe attests that she has seen the Plaintiff on a number of occasions and has also reviewed his medical records. Enloe attests that Plaintiff's job in the prison cafeteria did not require him to do any type of heavy lifting or use any type of machinery, and that if he had had any medical condition which prevented him from performing his job (making biscuits) this would have been indicated on his health summary classification. Enloe attests that there was nothing in Plaintiff's health summary classification prior to June 2003 that would have prohibited Plaintiff from working as a biscuit maker, and that Plaintiff's job of making biscuits should not have put him in any type of danger of injury in any way.

Enloe further attests that Plaintiff was on Dilantin to control a seizure disorder, and

---

[3]Originally listed in the Complaint as John Doe.



that a listed side effect of Dilantin is dizziness; however, she does not recall Plaintiff having any problems with dizziness at any time near June 12, 2003, nor do Plaintiff's medical records make any reference to the Plaintiff complaining of being dizzy in or around June 2003. Enloe attests that Plaintiff's medical records also do not show that Plaintiff ever complained about being dizzy at any time between his arrival at PCI and June 2003,[4] and that if the Plaintiff had a problem with dizziness, he should have reported it to the medical department, where it would have been treated in an appropriate manner. Enloe attests that Plaintiff did complain about being dizzy on August 21, 2003 (after the incident at issue), but did not make any further complaints of this nature, and that even if Plaintiff was having problems with dizzy spells, this should not have prevented him from performing his job in the cafeteria of making biscuits, and that this job should not have placed him in any danger.

Enloe attests that when Plaintiff was seen in the medical department on June 12, 2003 complaining of an injury to his back, it was believed that Plaintiff had a lumbar strain. Plaintiff was given a no work pass for four (4) days, following which Enloe saw the Plaintiff on June 16, 2003, at which time Plaintiff stated that he was not having any improvement and was having severe lumbar pain. Enloe attests that she changed Plaintiff's health summary and gave the Plaintiff a steroid injection, prescribed him pain medication and a muscle relaxer, and ordered x-rays of his spine. Enloe saw the Plaintiff again on June 23, 2003, at which time Plaintiff stated that the was feeling somewhat better. Enloe also noted that Plaintiff had refused x-rays initially because he was not feeling well the day the x-rays were to be taken, so she ordered that the x-rays be rescheduled.

---

[4]It is unclear when Plaintiff arrived at PCI, but Plaintiff's medical records show that he had not complained about any problems with dizziness since August 10, 2000, almost three years prior to the incident at issue.



Plaintiff subsequently failed to show-up for sick call on June 26, but did have x-rays completed on July 2, 2003.

When Plaintiff was seen again on July 7, they were still awaiting the x-ray report. Enloe attests that she also requested that Plaintiff be sent out to see an orthopaedic surgeon for further review, and that this request was approved. Enloe attests that when she next saw the Plaintiff on July 24, Plaintiff stated that he was having difficulty ambulating up the ramp to the medical building. Enloe prescribed additional medication at that point and noted that Plaintiff's orthopaedic appointment was pending. She also asked for approval to send Plaintiff for an MRI, but the MRI was not approved at that time pending the evaluation by the orthopaedic surgeon. Enloe attests that after Plaintiff was seen by the orthopaedic clinic, they recommended physical therapy for low back stretching and strengthening and also leg stretching and strengthening, as well as Motrin 800 mg. These medications were prescribed on August 7, 2003. Enloe attests that Plaintiff was thereafter seen by her on several additional occasions, and that he was also seen by other medical providers on numerous additional occasions.

Enloe attests that, in addition to physicians and other health care providers at PCI, Plaintiff was also seen by outside specialists on several occasions. Specifically, Plaintiff was referred to and seen by an orthopaedist, a neurologist, a physical therapist, and had an appointment to see a neurosurgeon. Plaintiff was also sent for various tests, including x-rays, an MRI of the lumbar spine, and a CT lumbar myelogram. Enloe attests that she recommended that Plaintiff be sent for consults with several outside physicians for several of these tests, and that Plaintiff was basically diagnosed by these specialists as having degenerative arthritis and spinal stenosis. With respect to Plaintiff's appointment to see a neurosurgeon, Enloe attests that the neurosurgeon



specifically requested that Plaintiff be sent for a CT lumbar myelogram prior to his visit, and that after this test was completed the results were forwarded to the neurosurgeon pursuant to his request. Enloe attests that the neurosurgeon then contacted Department of Corrections medical personnel and informed them that he did not need to see the Plaintiff and canceled the appointment, as there was nothing he could do for him. Enloe attests that the recommendations of the outside physicians have been largely followed, with only one or two recommendations not being specifically followed, such as a recommendation for a follow-up appointment with a neurologist which was disapproved by medical personnel until further information could be obtained as to the reason for the need for the follow-up appointment. Enloe attests that, in her opinion, Plaintiff has been provided proper medical care for his medical conditions while at PCI. See generally, Enloe Affidavit.

The Defendant Elvis Muhaabwa[5] has also filed an affidavit, wherein he attests that he is a classification caseworker at PCI. Muhaabwa attests that when an inmate arrives at PCI, a caseworker will meet with the inmate about finding them a prison job. Muhaabwa attests that as part of this process he reviews the inmate's custody level and medical summary, which would indicate if the inmate has medical restrictions. Muhaabwa attests that medical restrictions are determined by medical personnel, and that he does not have any involvement in these determinations. Muhaabwa attests that as of June 2003, Plaintiff had restrictions for no work around machines with moving parts and no work at extreme height, with no additional limitations or restrictions. Muhaabwa attests that after reviewing an inmate's restrictions, he determines what department might be appropriate for job placement, and then speaks to the appropriate individual (in this case, the

---

[5]This Defendant's name is incorrectly spelled in the caption of the Complaint as "Muhaawaha".



Defendant Olsen in the cafeteria). Olsen then assigns the inmate to a job which fits his limitations, or if there was no job which was appropriate, he would not hire the inmate.

Muhaabwa attests that Plaintiff was assigned to work and began working in the cafeteria on June 4, 2003, but only worked in the cafeteria for a few days. Muhaabwa attests that Plaintiff never informed him of any type of medical condition which would have prevented him from doing his cafeteria job, nor did Plaintiff ever complain to him or inform him that he could not do the job that he had been assigned in the cafeteria. Muhaabwa attests that if Plaintiff had informed him that he was unable to do the job, Muhaabwa would have worked with him if necessary to transfer to another job.

Muhaabwa attests that on June 16, 2003, additional restrictions were added to the Plaintiff's medical summary, including that Plaintiff could not work in food service, was to have no walking on wet, uneven surfaces, with no lifting greater than ten (10) pounds. Muhaabwa attests that these restrictions were not present prior to Plaintiff's placement in the cafeteria on June 4, 2003. See generally, Muhaabwa Affidavit.

The Defendant Ozmint has submitted an affidavit wherein he attests that he is the Director of the South Carolina Department of Corrections. Ozmint attests that his office is located in Columbia, that he has no office at PCI, and that he did not have any involvement with, and has no first hand knowledge of, the incidents complained of by the Plaintiff in his Complaint. Ozmint further attests that he has no recollection of ever having been contacted by the Plaintiff concerning these matters, or receiving any inmate request or correspondence of any kind from the Plaintiff concerning these incidents. Ozmint also attests that he has no direct involvement in the medical care and treatment of inmates, including the Plaintiff, and that he relies on medical providers at each

7



institution to provide appropriate medical care for inmates. See generally, Ozmint Affidavit.

The Defendants have also submitted an affidavit from Mike Fowler, who attests that he is the Grievance Coordinator at PCI, that he has reviewed the grievances filed by the Plaintiff, and has determined that the Plaintiff has filed no grievances concerning his assignment to work in the cafeteria in June 2003. Fowler Affidavit.

The Defendant Richard Bazzle has submitted an affidavit wherein he attests that he is the Warden at PCI. Bazzle attests that, while he is in charge of the overall operation at PCI, he did not have any involvement with, and has no first hand knowledge of, the incidents complained of by the Plaintiff in his Complaint, has no recollection of ever having been contacted by the Plaintiff concerning these matters, and has no personal recollection of receiving any inmate request or correspondence of any kind from the Plaintiff concerning these incidents. Bazzle further attests that he does not have any direct involvement in the medical care and treatment of inmates, including the Plaintiff. Bazzle attests that he does recall speaking with the Plaintiff on one occasion concerning his medical condition, and attests that he instructed Plaintiff to sign up for sick call to be seen by medical personnel. Bazzle attests that he does not recall Plaintiff speaking with him again about his medical condition. See generally, Bazzle Affidavit.

Finally, the Defendant Robert Olson submitted an affidavit wherein he attests that he is the senior Food Service Director at PCI, and that as such he is in charge of the cafeteria. Olson attests that Plaintiff worked in the cafeteria from June 4, 2003 until June 16, 2003, although he did not actually work in the cafeteria after June 13. Olson attests that he is the one who hires inmates to work in the cafeteria, that he works with the classification caseworkers in placing inmates in cafeteria jobs, and that he hired Plaintiff for a job in the cafeteria making biscuits. Olson attests that



Plaintiff had medical restrictions preventing him from working around machines with moving parts or working at extreme heights, and that Plaintiff's job in the cafeteria did not require him to work at either extreme heights or with machinery with moving parts, nor did Plaintiff have to do any type of heavy lifting. Olson attests that Plaintiff's job was to mix ingredients in a bowl, take out the dough, roll it with a rolling pin, and cut the biscuits. Olson also attests that the cart Plaintiff used is on wheels so it can be moved from one area to another, that Plaintiff's job did not require the lifting of more than approximately five (5) to ten (10) pounds, that Plaintiff did not work in the cafeteria after June 13, 2003, and that he was officially transferred from the cafeteria as of June 16, 2003.

Olson further attests that Plaintiff never complained to him at any time after he was assigned to his job that he was having any type of difficulty or could not do his job. Olson attests that he first became aware of Plaintiff's injury when Plaintiff requested a copy of the incident report for his injury, although he cannot recall specifically if Plaintiff ever came to him or sent a request to staff form to him concerning this matter. Olson attests that none of the other staff members knew anything about Plaintiff's alleged injury, that there was no incident report completed, and that Plaintiff did not tell him about his [Plaintiff's] injury and he [Olson] did not have any information concerning same until receiving contact from the Plaintiff requesting the incident report. Olson attests that he then questioned all staff members assigned to the cafeteria, and no one had any knowledge about Plaintiff's alleged injury. See generally, Olson Affidavit.

In opposition to the motion for summary judgment, Plaintiff has filed an "affidavit" wherein he makes several conclusory claims or allegations, such as that the "Defendants' actions was of cruel and unusual punishment", and that the Defendants have formed a "coalition to

9



corroborate one another." Plaintiff also attests that on February 4, 2005, the State Worker's Compensation Commission ruled that his injury was not within the scope and course of his employment, but "was a result of my medical condition of seizure and medicine that I take for same." Plaintiff also complains that, due to his pro se status and medical condition, he is not able to adequately respond to the Defendants' motion or evidence, and is in need of counsel.[6] Plaintiff also contends that Muhaabwa required him to work, and said that if he did not go back to work that Plaintiff would "lose my inmate's pay and work credits." Plaintiff essentially alleges that Enloe over medicated him, and then allowed him to be placed around dangerous machinery in the cafeteria. Plaintiff also complains that Enloe did not adequately assess or evaluate his condition, and failed to provide the necessary medical forms or status reports to keep him from being injured.

With respect to the Defendant Bazzle's statement in his affidavit that he did not have any firsthand knowledge of the incidents set forth in the Complaint, Plaintiff asserts in his affidavit that Bazzle "was fully aware that grievance director placed his investigation and contacted medical at Perry Correctional Institution," which would have made Bazzle "fully aware of fact that I sustained further injuries to my back." Plaintiff complains that Bazzle also "made sure that I could not obtain a Step 2 grievance," including forcing the former grievance coordinator (Patterson) out of the "front door" because she followed grievance procedure.

Plaintiff also states that Bazzle and Olson denied him medical care, that he was repeatedly "traumatized" because of Bazzle's "continued rejections", and that he had not received any form or documents despite numerous inmate requests that he had forwarded to the Warden. Plaintiff also states that the Defendant Ozmint "was informed by his official(s) at Perry Correctional

---

[6]Plaintiff was denied appointment of counsel in an order filed July 13, 2005.



Facility on many occurrences, occasions" by virtue of Ozmint standing along side Bazzle "directly by room that I was housed in on all visits, just looking at me suffer and knowing prior through his official(s). I can only allege that he knew."

Finally, contrary to the statements in Defendants' affidavits, Plaintiff alleges that an incident report was written on the morning of June 12 by "former food service staff - Mrs. Patterson." Attached to Plaintiff's affidavit is a copy of what purports to be an incident report dated June 12, 2003, signed by an "R. Patterson", which reads: "[Plaintiff] reports to me (Mrs. Patterson) that his back was hurting. And he think he pulled something when he pick up the mixing bowl. Mrs. Patterson called to let medical see him." Plaintiff has also attached a copy of a grievance filed in this matter (Step 2), indicating that he has exhausted his administrative remedies.[7] The response to the grievance noted that Plaintiff was treated in medical as an emergency on June 12, 2003, where the medical staff documented that his injury was work related. See generally, Plaintiff's Affidavit, with attached Exhibits.

## Discussion

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing there is a genuine issue for trial." Rule 56(e), Fed.R.Civ.P. Further, while the Federal Court is charged with liberally

---

[7]This grievance appears to relate only to a claim regarding Plaintiff's pay status.

construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, see Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972), the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a Federal claim, nor can the Court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Social Services, 901 F.2d 387 (4th Cir. 1990).

After careful consideration of the arguments and evidence presented, the undersigned finds and concludes that the Defendants are entitled to summary judgment in this case, and that this case should therefore be dismissed.[8] Although some of the Defendants correctly argue that, even if these claims have merit, they are not proper party Defendants because they played no role in the incidents cited in the Complaint; see generally Vinnedge v. Gibbs, 550 F.2d 926, 927-929 & nn. 1-2 (4th Cir. 1977) [doctrines of vicarious liability and respondeat superior are not applicable in § 1983 actions]; Monell v. Dep't of Social Servs., 436 U.S. 658, 694 (1978) [supervisory defendant may not be held liable for the acts of others absent evidence of an official policy or custom for which he was responsible and which resulted in illegal action]; even if the Court were to find that all of the

---

[8]Although the Defendants assert as an affirmative defense that the Plaintiff has failed to exhaust his administrative remedies in this case as required by 42 U.S.C. § 1997(e); see Anderson v. XYZ Correctional Health Services, Inc., 407 F.3d 674, 683 (4th Cir. 2005) [inmate's failure to exhaust administrative remedies is an affirmative defense to be pled and proven by the Defendant]; Plaintiff asserts in his affidavit that he has exhausted his administrative remedies, and has provided as an attachment to his affidavit a copy of a final Step 2 grievance. The undersigned takes judicial notice that Step 2 is the Department of Corrections final response to a grievance at the prison level. See also the orders filed in Misc. No. 3:96-MC-83-2 and Misc. No. 3:96-MC-84-2 (D.S.C., May 9, 1996), which incorporate by reference SCDC PS-10.01 (May 1, 1996). While, as previously noted, this grievance appears to relate to a pay issue, it does reference the date of the incident at issue (June 2003). Therefore, out of an abundance of caution the undersigned has discussed Plaintiff's claim hereinabove on the merits.



Defendants named in this case are proper party Defendants under Plaintiff's allegations, Plaintiff has still failed to provide sufficient evidence to survive summary judgment.

First, Plaintiff's allegation that he somehow injured his back while working in the prison cafeteria, even if true, fails to set forth a claim of constitutional magnitude.[9] In order to give rise to a constitutional claim, Plaintiff must present evidence to show that a named Defendant engaged in conduct "for the very purpose of causing harm or with the knowledge that harm [would] result." Farmer v. Brennen, 511 U.S. 825, 835 (1994); see also Wilson v. Seiter, 501 U.S. 294, 298 (1991); Levy, 1997 WL 112833 ["A defendant acts with deliberate indifference only if he or she 'knows of and disregards' an excessive risk to inmate health or safety.'"], quoting Farmer, 511 U.S. at 837. Plaintiff has presented no such evidence. Plaintiff seems to blame the named prison officials for his injury because he had a dizzy spell while he was attempting to lift some sheet pans and felt lightheaded. Plaintiff particularly faults Enloe, who he claims was over-medicating him on Dilantin. However, Plaintiff has provided no evidence to support these general and conclusory allegations of his Complaint, or to support his claim that any Defendant was deliberately indifferent to his health and safety by allowing him to work in the prison cafeteria. See Papasan v. Allain, 478 U.S. 265, 286 (1986)[Courts need not assume the truth of legal conclusions couched as factual allegations.].

As for Plaintiff's claim that he did not receive adequate medical treatment for his

---

[9]The undersigned notes that this is not the first time Plaintiff has filed a lawsuit in this Court alleging that his constitutional rights were violated when he was injured while doing work at a prison job. See Freeman v. Commissioner, C/A No. 0:03-2882-18BD, where Plaintiff claimed that he injured his back while wringing out a mop. That case was dismissed at summary judgment by order of the Honorable David C. Norton, United States District Judge, filed October 15, 2004, only one month before Plaintiff filed the case at bar. Aloe Creme Laboratories, Inc. V. Francine Co., 425 F.2d 1295, 1296 (5th Cir. 1970) [This Court may take judicial notice of its own records.]



back injury or that he was being overdosed on medications, Plaintiff has again failed to present any evidence to show that Enloe or any other named Defendant was deliberately indifferent to a serious medical need, which is the standard Plaintiff must meet to survive summary judgment on this claim. The Defendant Enloe has provided a detailed affidavit concerning the medical care and treatment Plaintiff received during the applicable time period, and Plaintiff's medical records also reflect that he has received consistent and ongoing care for his complaints.  While Plaintiff is obviously dissatisfied with his medical care, whether or not he was provided with the care he desired is immaterial for purposes of a constitutional claim. Jackson v. Fair, 846 F.2d 811, 817 (1st Cir. 1988) [the Constitution "does not guarantee to a prisoner the treatment of his choice."]; see Brown v. Thompson, 868 F.Supp. 326, 329-330, n. 2 (S.D.Ga. 1994).  A physician's actions rise to the level of deliberate indifference only when the treatment provided is "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990).  There is no such evidence in this case. Nor is there any evidence to show that Plaintiff was being over-medicated, or that there was any unnecessary delay in any treatment.

Further, even if the evidence showed that there was a delay in Plaintiff's medical treatment, or even that possible mistakes had been made, this evidence would not in and of itself amount to a constitutional violation. See Casey v. Lewis, 834 F.Supp. 1569, 1583 (D.Ariz. Apr. 5, 1993) ["[A] mere delay in medical care, without more, is insufficient to state a claim against prison officials for deliberate indifference."]; Estelle v. Gamble, 429 U.S. 97, 106 (1976) ["medical malpractice does not become a constitutional violation merely because the victim is a prisoner."]; see also DeShaney v. Winnebago County Dep't of Social Servs., 489 U.S. 189, 200-



203 (1989) [§ 1983 does not impose liability for violations of duties of care arising under state law]; Baker v. McClellan, 443 U.S. 137, 146 (1976) [§ 1983 claim does not lie for violation of state law duty of care]; Brooks v. Celeste, 39 F.3d 125 (6th Cir. 1994); Sellers v. Henman, 41 F.3d 1100 (7th Cir. 1994); White v. Napoleon, 897 F.2d 103, 108-109 (3d Cir. 1990); Daniels v. Williams, 474 U.S. 327, 328-336 & n. 3 (1986) [mere negligence is not actionable under § 1983]; Davidson v. Cannon, 474 U.S. 344, 345-348 (1986); Ruefly v. Landon, 852 F.2d 792, 793-794 (4th Cir. 1987); Smart v. Villar, 547 F.2d 112 (10th Cir. 1976) [affirming summary dismissal]. Therefore, as there is no evidence before the Court to show that during the relevant time period any named Defendant was deliberately indifferent to any serious medical condition from which the Plaintiff was suffering, Plaintiff's medical claim should be dismissed. Estelle, 429 U.S. at 105; Harris v. Thigpen, 941 F.2d 1495, 1505-1507 (11th Cir. 1991); see Levy v. State of Ill. Dept. of Corrections, No. 96-4705, 1997 WL 112833 (N.D.Ill. March 11, 1997).

Finally, the Defendant has offered several defenses in its motion for summary judgment to possible state claims Plaintiff may be asserting, or may have intended to assert, in his Complaint. The undersigned does not read Plaintiff's Complaint as having asserted any strictly state law claims. However, in the event Plaintiff has intended to assert any such claims, they should be dismissed, without prejudice, in order that Plaintiff may pursue any such claims in a more appropriate state forum. See United Mine Workers v. Gibbs, 387 U.S. 715 (1966), and its progeny.

### Conclusion

Based on the foregoing, it is recommended that the Defendants' motion for summary



judgment be **granted**, and that this case be **dismissed**.

    The parties are referred to the Notice Page attached hereto.

                  _____
                   Bristow Marchant
                   United States Magistrate Judge

Columbia, South Carolina

August 18, 2005

### Notice of Right to File Objections to Magistrate Judge's Report and Recommendation
### &
### The Serious Consequences of a Failure to Do So

The parties are hereby notified that any objections to the attached Report and Recommendation (or Order and Recommendation) must be filed within ten (10) days of the date of its filing. 28 U.S.C. § 636 and Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three days for filing by mail. Fed. R. Civ. P. 6. Based thereon, this Report and Recommendation, any objections thereto, and the case file will be delivered to a United States District Judge fourteen (14) days after this Report and Recommendation is filed. Advance Coating Technology, Inc. v. LEP Chemical, Ltd., 142 F.R.D. 91, 94 & n. 3 (S.D.N.Y. 1992). A magistrate judge makes only a recommendation, and the authority to make a final determination in this case rests with the United States District Judge. See Mathews v. Weber, 423 U.S. 261, 270-271 (1976); and Estrada v. Witkowski, 816 F. Supp. 408, 410 (D.S.C. 1993).

During the ten-day period, but not thereafter, a party must file with the Clerk of Court specific, written objections to the Report and Recommendation, if he wishes the United States District Judge to consider any objections. Any written objections must *specifically identify* the portions of the Report and Recommendation to which objections are made *and* the basis for such objections. Failure to file written objections shall constitute a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the United States District Judge. See United States v. Schronce, 727 F.2d 91, 94 & n. 4 (4th Cir.), *cert. denied*, Schronce v. United States, 467 U.S. 1208 (1984); and Wright v. Collins, 766 F.2d 841, 845-47 & nn. 1-3 (4th Cir. 1985). Moreover, if a party files specific objections to a portion of a magistrate judge's Report and Recommendation, but does not file specific objections to other portions of the Report and Recommendation, that party waives appellate review of the portions of the magistrate judge's Report and Recommendation to which he did not object. In other words, a party's failure to object to one issue in a magistrate judge's Report and Recommendation precludes that party from subsequently raising that issue on appeal, even if objections are filed on other issues. Howard v. Secretary of HHS, 932 F.2d 505, 508-509 (6th Cir. 1991). See also Praylow v. Martin, 761 F.2d 179, 180 n. 1 (4th Cir.)(party precluded from raising on appeal factual issue to which it did not object in the district court), *cert. denied*, 474 U.S. 1009 (1985). In Howard, supra, the Court stated that general, non-specific objections are *not* sufficient:

> A general objection to the entirety of the [magistrate judge's] report has the same effects as would a failure to object. The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the [magistrate judge] useless. * * * This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act. * * * We would hardly countenance an appellant's brief simply objecting to the district court's determination without explaining the source of the error.

*Accord* Lockert v. Faulkner, 843 F.2d 1015, 1017-19 (7th Cir. 1988), where the Court held that the appellant, who proceeded *pro se* in the district court, was barred from raising issues on appeal that he did not specifically raise in his objections to the district court:

> Just as a complaint stating only 'I complain' states no claim, an objection stating only 'I object' preserves no issue for review. * * * A district judge should not have to guess what arguments an objecting party depends on when reviewing a [magistrate judge's] report.

See also Branch v. Martin, 886 F.2d 1043, 1046 (8th Cir. 1989)("no de novo review if objections are untimely or general"), which involved a *pro se* litigant; and Goney v. Clark, 749 F.2d 5, 7 n. 1 (3rd Cir. 1984)("plaintiff's objections lacked the specificity to trigger *de novo* review"). This notice, hereby, apprises the parties of the consequences of a failure to file specific, written objections. See Wright, supra,; and Small v. Secretary of HHS, 892 F.2d 15, 16 (2nd Cir. 1989). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing addressed as follows:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

17

